1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
DAVID C. WALTON (167268)
CATHERINE J. KOWALEWSKI (216665)
DAVID T. WISSBROECKER (243867)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
davew@rgrdlaw.com
katek@rgrdlaw.com
dwissbroecker@rgrdlaw.com

LAW OFFICES OF CURTIS V.
  TRINKO, LLP
CURTIS V. TRINKO
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: 212/490-9550
212/986-0158 (fax)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. GOLDSTEIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | **VIA FAX**<br>No.2:11-cv-348 RSWL (JCGx) |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) ) | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| TONGXIN INTERNATIONAL LTD., RUDY WILSON, JACKIE CHANG, WILLIAM E. ZIELKE and ZHANG DUANXIANG, | ) ) ) ) ) ) | |
| Defendants. | ) ) | DEMAND FOR JURY TRIAL |

FILED
2011 JAN 12 PM 1:17
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

**JURISDICTION AND VENUE**

1.   Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 ("1934 Act"). The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

2.   Venue is proper in this district pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this district.

3.   Tongxin International Ltd. is based at 199 Pierce Street, Suite 202, Birmingham, Michigan. Defendant Jackie Chang resides in this district and certain of the acts and conduct complained of herein, including the dissemination of materially false and misleading information to the investing public, occurred in this district.

4.   In connection with the acts and conduct alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

**INTRODUCTION**

5.   This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Tongxin International Ltd. ("Tongxin" or the "Company") between May 15, 2009 and December 14, 2010, inclusive (the "Class Period"), against Tongxin and certain of its officers and/or directors for violations of the 1934 Act.

6.   Tongxin, through its subsidiary, Hunan Tongxin Enterprise Co. Ltd. ("Hunan"), designs, develops, manufactures, sells, and services engineered vehicle body structures ("EVBS") for light, medium, and heavy duty trucks, and light vehicles in the People's Republic of China. Its EVBS consist of exterior body panels, including doors, floor pans, hoods, side panels, and fenders. The Company also designs, fabricates, and tests dies used in the vehicle body structure manufacturing process. In addition, it manufactures complete cab structures for commercial vehicles.

7.     During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. Specifically, defendants improperly accounted for Tongxin's related-party transactions.  As a result of defendants' false statements, Tongxin's stock traded at artificially inflated prices during the Class Period, reaching a high of $11.39 per share on October 14, 2009.

8.     On June 30, 2010, Tongxin announced that it would be delayed in filing its Form 20-F for the fiscal year ending December 31, 2009, as the Company's auditor needed additional time to complete its review.

9.     Beginning in July 2010, the Company began to acknowledge that the delay was due to an investigation by the Company's Audit Committee into Tongxin's accounting for certain related-party transactions.    Nevertheless, the Company downplayed the investigation and the circumstances surrounding the review of the related-party transactions.

10.     On October 12, 2010, Tongxin announced that NASDAQ would delist the Company's stock due to its failure to timely file its Form 20-F.  Moreover, the Company acknowledged that a report issued by KPMG, the forensic accountants hired by the Company's Audit Committee, concluded that the documentary support for certain of its related-party transactions was contradictory, insufficient and lacking in substantive detail and/or accuracy, thus calling into question the validity of the transactions.

11.     On this news, Tongxin's stock dropped $0.84 per share to close at $2.86 per share on October 12, 2010, on high volume.

12.     On November 20, 2010, Tongxin issued a press release announcing that defendants Rudy Wilson and Jackie Chang were being removed from their positions as officers of the Company.  Additionally, Tongxin lowered its revenue guidance for fiscal year 2010 from its prior outlook of $150-$160 million to a range of $100-$110 million.

13.    On this news, Tongxin's stock dropped $0.13 per share to close at $1.63 per share on November 22, 2010, the next trading day, a decline of 7% on high volume.

14.    Thereafter, on December 13, 2010, Tongxin announced that it had filed a civil suit against defendant Chang due to the wrongful transfer of Company funds by Chang into an account for the benefit of her and defendant Wilson.  As alleged in Tongxin's complaint, in mid-November, defendant Chang became aware of the fact that the Company's Board was planning to terminate her and defendant Wilson and thus began to transfer funds from a Company account into a bank account in her name to protect herself in the event she was terminated.

15.    On this news, Tongxin's stock declined $0.05 per share to close at $1.35 per share on December 14, 2010, the next trading day, a decline of 4% on high volume.

16.    The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    Tongxin improperly accounted for its related-party transactions such that its financial statements were presented in violation of Generally Accepted Accounting Principles ("GAAP"); and

(b)    Defendants failed to maintain proper internal controls related to Tongxin's engaging in and accounting for its related-party transactions and over the safeguard of the Company's assets.

17.    As a result of defendants' false statements, Tongxin's stock traded at artificially inflated levels during the Class Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down over 88% from their Class Period high.

**PARTIES**

18.    Plaintiff Michael A. Goldstein purchased the common stock of Tongxin during the Class Period as set forth in the certification attached hereto and was damaged as the result of defendants' wrongdoing as alleged in this complaint.

19.    Defendant Tongxin designs, develops, manufactures, sells, and services EVBS for light, medium, and heavy duty trucks, and light vehicles in the People's Republic of China.

20.    Defendant Rudy Wilson ("Wilson") was, at relevant times, Chairman of the Board and Chief Executive Officer ("CEO") of Tongxin until being removed from his position on November 20, 2010.  Defendant Wilson remains a director of the Company.

21.    Defendant Jackie Chang ("Chang") was, at relevant times, the Company's Chief Financial Officer ("CFO") and Chief Accounting Officer ("CAO") until being removed from her positions on November 20, 2010.

22.    Defendant William E. Zielke ("Zielke") is, and at all relevant times was, a director of Tongxin.  On November 20, 2010, Zielke was appointed CEO and CAO of Tongxin.

23.    Defendant Zhang Duanxiang ("Duanxiang") is, and at all relevant times was, a director of Tongxin and Vice Chairman of Hunan.  On November 20, 2010, Duanxiang was appointed Chairman of the Board of Tongxin.

24.    The defendants referenced above in ¶¶20-23 are referred to herein as the "Individual Defendants."

25.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Tongxin's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their

issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

26.    Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Tongxin.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Tongxin common stock was a success, as it: (i) deceived the investing public regarding Tongxin's prospects and business; (ii) artificially inflated the price of Tongxin common stock; and (iii) caused plaintiff and other members of the Class to purchase Tongxin common stock at inflated prices.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Tongxin common stock during the Class Period (the "Class").  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

28.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Tongxin has over 13.4 million shares of stock outstanding, owned by hundreds if not thousands of persons.

29.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the

Class which predominate over questions which may affect individual Class members include:

   (a) whether the 1934 Act was violated by defendants;

   (b) whether defendants omitted and/or misrepresented material facts;

   (c) whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

   (d) whether defendants knew or deliberately disregarded that their statements were false and misleading;

   (e) whether the price of Tongxin common stock was artificially inflated; and

   (f) the extent of damage sustained by Class members and the appropriate measure of damages.

  30. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

  31. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

  32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## BACKGROUND

  33. Tongxin, through its wholly owned subsidiary Hunan, is engaged in designing, developing, manufacturing, selling and servicing automotive EVBS, body panels, and dies, primarily in the People's Republic of China, with some exports to Vietnam. It is an independent supplier of EVBS in China, providing EVBS for both the commercial truck and light vehicle market segments. EVBS consist of exterior body panels, including doors, floor pans, hoods, side panels and fenders.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS
## ISSUED DURING THE CLASS PERIOD

34.    On May 15, 2009, Tongxin issued a press release announcing its first quarter 2009 financial results.  The Company reported net income of $4.1 million, or $0.36 diluted earnings per share ("EPS"), and revenue of $29.5 million for the quarter ending March 31, 2009.

35.    On August 10, 2009, Tongxin issued a press release announcing its second quarter 2009 financial results.  The Company reported net income of $4.4 million, or $0.39 diluted EPS, and revenue of $34.8 million for the quarter ending June 30, 2009.

36.    On November 9, 2009, Tongxin issued a press release announcing its third quarter 2009 financial results.  The Company reported non-GAAP net income of $3.8 million, or $0.29 diluted EPS, and revenue of $27.1 million for the quarter ending September 30, 2009.

37.    On February 23, 2010, Tongxin issued a press release announcing its estimated fourth quarter financial results and preliminary 2009 projections.  The Company reported estimated revenues of $29.5 to $32.5 million for the fourth quarter of 2009.  The Company further reported estimated revenues of between $121 and $124 million for its fiscal year ended December 31, 2009.  Additionally, Tongxin provided its guidance for 2010, forecasting revenues of between $150 to $160 million.  The release stated in part:

"Consistent with the continued growth of the commercial vehicle segment in China, we anticipate Tongxin to achieve growth of approximately 25% in 2010," began Duanxiang Zhang, CEO of Hunan Tongxin. "We have recovered completely from the 2008 downturn and we are set to report record results for 2009. Our 2010 growth targets are consistent with our Company's goal to outperform the overall Chinese commercial vehicle market's growth," Zhang concluded.

38.     On June 30, 2010, Tongxin filed a Form 12b-25 with the SEC, requesting an extension to file its Form 20-F for the year ending December 31, 2009.  The Form 12b-25 stated in part:

> THE   COMPANY'S   INDEPENDENT   AUDITOR,   BDO SEIDMAN LLP, IS STILL IN THE PROCESS OF COMPLETING ITS DOCUMENTATION AND REVIEW PROCESS.

39.     On July 15, 2010, Tongxin issued a press release entitled "Tongxin International Ltd. Updates Shareholders on 2009 Audit," which stated in part:

> Tongxin International Ltd., a China-based manufacturer of engineered vehicle body structures ("EVBS" or "truck cabs") regrets to inform its shareholders that it is unable to publish its Audited Consolidated Financial Statements for the year ended December 31, 2009 within the extended timeframe of July 15, 2010. ***The Company is in the process of obtaining adequate documentation to support and determine the appropriate accounting treatment of certain related-party transactions of approximately US $7.7 million with a related party, Meihua Bus ("MB"). TXI will file audited financial statements as soon as they become available***.

> TXI's wholly-owned operating subsidiary is Hunan Tongxin Enterprise Co., Ltd. ("HT") in the People's Republic of China ("PRC"). TXI acquired HT in 2008. When HT sought approval from the PRC to be acquired by TXI, there were concerns that government approval would not be forthcoming unless HT spun off its bus manufacturing business. Therefore, HT spun off its bus manufacturing business which resulted in the creation of MB as a separate company in July 2007.

> As a result of the foregoing, the Company's completion of its annual consolidated financial statements and required disclosures are being delayed pending the Company's review of these related-party

matters. The Company's Audit Committee has obtained a third-party to assist in obtaining adequate documentation of this review. The Company's Audit Committee and Management have discussed the facts and circumstances of these related-party matters with the Company's independent auditors.

40.   On July 23, 2010, Tongxin issued a press release reporting it had received a NASDAQ Staff Deficiency Letter on July 19, 2010, which stated the Company was no longer in compliance with NASDAQ Listing Rules for its failure to file a Form 20-F for the period ended December 31, 2009.

41.   On September 17, 2010, the Company filed a Form 6-K with the SEC reporting unaudited 2009 financial results.  The Company reported a net loss of ($13.3) million or ($1.12) diluted EPS, and revenues of $121.6 million for the fiscal year ended December 31, 2009.  Furthermore, the Company reported that it had filed a Plan of Compliance with the NASDAQ requesting continued listing on the NASDAQ stock market despite its failure to file its Form 20-F for the fiscal year ending December 31, 2009.  The Form 6-K stated in part:

Accounting Treatment of Certain Related Party Transactions

As disclosed on July 15, 2010 the Company was in the process of obtaining adequate documentation to support and determine the appropriate accounting treatment of certain related-party transactions of approximately $7.7 million with a related party, Meihua Bus ("MB"). As a result of the foregoing, the Company's completion of its annual consolidated financial statements and required disclosures were delayed pending the Company's review of these related-party matters. ***The Company's Audit Committee has obtained a third-party, KPMG, LLP on April 26, 2010, to assist in obtaining adequate documentation for this review.   The Company has completed this review and has***

1    *accounted for the transactions on its income statement and balance*

2    *sheet. . . .*

3    The Company is discussing with its subsidiary, Hunan Tongxin

4    Enterprise Co Ltd. the resolution of certain related party transactions of

5    $7.7 million and anticipates resolving these issues as soon as possible

6    allowing the company to file its 2009 audited financial statements. *While*

7    *these discussions are on going, the Company has elected to provide to*

8    *its investors unaudited financial statements. The Company does not*

9    *anticipate any material changes between the unaudited and audited*

10   *financial statements when filed.*

11   42.    On October 12, 2010, the Company filed a Form 6-K with the SEC,

12   announcing the results of the NASDAQ Staff's review of information the Company

13   provided regarding compliance, which stated in part:

14   Based upon the NASDAQ Staff's review of the information

15   provided as the Company's Plan of Compliance ("Plan") on September

16   17, 2010 and information subsequently provided to NASDAQ by the

17   Company and its audit committee, NASDAQ has determined to reject

18   the Company's Plan and the Company's request for continued  listing

19   under Listing Rule 5810 (b) on the NASDAQ Stock Market.

20   The Company indicated that it is delinquent in filing its Form 20-F

21   due to an investigation being conducted by its Audit Committee. *A*

22   *report by the forensic accountant, KPMG, retained by the audit*

23   *committee calls into question, among other things, the validity of*

24   *certain complicated related party transactions.  This investigation is*

25   *ongoing and as a result, the Company is unable to provide a timetable*

26   *by which the investigation will be concluded and audited financials*

27   *filed.* As part of the Staff's ongoing review or in response to any

28

submissions that [the] Company will make, NASDAQ may identify additional deficiencies under NASDAQ rules.

Accordingly, the Company's securities will be delisted from the NASDAQ Stock Market and will be suspended on the opening of the business day October 14, 2010. The company anticipates it[s] securities will become able to be traded on the "pink sheets". The Company also anticipates re-applying for trading on NASDAQ after the audit committee completes its investigation and after filing its Form 20-F.

43.     On this news, Tongxin's stock dropped $0.84 per share to close at $2.86 per share on October 12, 2010, on high volume.

44.     On November 20, 2010, Tongxin issued a press release announcing that defendants Wilson and Chang were being removed from their positions as officers of the Company.  Additionally, Tongxin lowered its revenue guidance for fiscal year 2010 from its prior outlook of $150-$160 million to a range of $100-$110 million.

45.     On this news, Tongxin's stock dropped $0.13 per share to close at $1.63 per share on November 22, 2010, the next trading day, a decline of 7% on high volume.

46.     Thereafter, on December 13, 2010, Tongxin announced that it had filed a civil suit against defendant Chang due to the wrongful transfer of Company funds by Chang into an account for the benefit of her and defendant Wilson.  As alleged in Tongxin's complaint, in mid-November, defendant Chang became aware of the fact that the Company's Board was planning to terminate her and defendant Wilson and thus began to transfer funds from a Company account into a bank account in her name to protect herself in the event she was terminated.

47.     On this news, Tongxin's stock declined $0.05 per share to close at $1.35 per share on December 14, 2010, the next trading day, a decline of 4% on high volume.

48.    On December 16, 2010, in response to the Company's lawsuit, defendant Chang issued a press which stated in part:

>    In her capacity as CFO for TXIC [Tongxin], Ms. Chang learned of possibly unsubstantiated transactions in China between a subsidiary of TXIC and a related company in the amount of $7.7 million. As required by law, Ms. Chang asked the company's audit committee to pursue an audit and forensic procedures. TXIC's forensic accountant KPMG concluded that the documentary support for the transactions was contradictory, insufficient and lacking in substantive details and/or accuracy, thus calling in question the validity of the related party transactions. As a result, Ms. Chang declined to sign a representation letter, drafted by the company's statutory auditor, stating that the related party transactions were appropriately recorded, accurate, and complete.
>
>    On November 17, 2010, Ms. Chang was contacted by and interviewed by the Enforcement Division for the Securities and Exchange Commission, which had initiated its own investigation of TXIC. Two days later, the Board of Directors of TXIC terminated Ms. Chang's employment without providing a reason although she had a written employment contract through 2012.

49.    The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    Tongxin improperly accounted for its related-party transactions such that its financial statements were presented in violation of GAAP; and

(b)    Defendants failed to maintain proper internal controls related to Tongxin's engaging in and accounting for its related-party transactions and over the safeguard of the Company's assets.

50.    As a result of defendants' false statements, Tongxin's stock traded at artificially inflated levels during the Class Period.  However, after the above

1   revelations seeped into the market, the Company's shares were hammered by massive

2   sales, sending them down over 88% from their Class Period high.

3                                    **LOSS CAUSATION**

4         51.    During the Class Period, as detailed herein, the defendants made false

5   and misleading statements and engaged in a scheme to deceive the market and a

6   course of conduct that artificially inflated the price of Tongxin common stock and

7   operated as a fraud or deceit on Class Period purchasers of Tongxin common stock by

8   misrepresenting the Company's business and prospects.  Later, when the defendants'

9   prior misrepresentations and fraudulent conduct became apparent to the market, the

10  price of Tongxin common stock fell precipitously, as the prior artificial inflation came

11  out of the price over time.  As a result of their purchases of Tongxin common stock

12  during the Class Period, plaintiff and other members of the Class suffered economic

13  loss, *i.e.*, damages, under the federal securities laws.

14                                        **COUNT I**

15          **For Violation of §10(b) of the 1934 Act and Rule 10b-5**
                            **Against All Defendants**

16        52.    Plaintiff incorporates ¶¶1-51 by reference.

17        53.    During the Class Period, defendants disseminated or approved the false

18  statements specified above, which they knew or deliberately disregarded were

19  misleading in that they contained misrepresentations and failed to disclose material

20  facts necessary in order to make the statements made, in light of the circumstances

21  under which they were made, not misleading.

22        54.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

23              (a)    employed devices, schemes and artifices to defraud;

24              (b)    made untrue statements of material facts or omitted to state

25  material facts necessary in order to make the statements made, in light of the

26  circumstances under which they were made, not misleading; or

27

28

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Tongxin common stock during the Class Period.

55.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Tongxin common stock.  Plaintiff and the Class would not have purchased Tongxin common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

56.     Plaintiff incorporates ¶¶1-55 by reference.

57.     The Individual Defendants acted as controlling persons of Tongxin within the meaning of §20(a) of the 1934 Act.  By virtue of their positions with the Company, and ownership of Tongxin stock, the Individual Defendants had the power and authority to cause Tongxin to engage in the wrongful conduct complained of herein.  Tongxin controlled the Individual Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.     Awarding plaintiff and the members of the Class damages, including interest;

C.     Awarding plaintiff reasonable costs and attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

1

## JURY DEMAND

2        Plaintiff demands a trial by jury.

3 DATED:  January 12, 2011           ROBBINS GELLER RUDMAN
                                       & DOWD LLP

4                                        DARREN J. ROBBINS
                                       DAVID C. WALTON

5                                        CATHERINE J. KOWALEWSKI
                                       DAVID T. WISSBROECKER

6

7

8                                             DAVID C. WALTON

9                                      655 West Broadway, Suite 1900
                                       San Diego, CA  92101

10                                      Telephone:  619/231-1058
                                     619/231-7423 (fax)

11                                      LAW OFFICES OF CURTIS V.

12                                        TRINKO, LLP
                                     CURTIS V. TRINKO

13                                      16 West 46th Street, 7th Floor
                                     New York, NY  10036

14                                      Telephone:  212/490-9550
                                     212/986-0158 (fax)

15                                      Attorneys for Plaintiff

16 S:\CptDraft\Securities\Cpt Tongxin International.doc

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

**I, MICHAEL A. GOLDSTEIN**, hereby certify as follows:

1.     I have read the complaint prepared for me concerning Tongxin International Ltd. ("TXIC") to be brought under the federal securities laws, and have authorized the filing of such an action on my behalf.

2.     Plaintiff did not purchase, or otherwise acquire, the securities of Tongxin International Ltd that are the subject of this action, at the direction of plaintiff's counsel, or in order to participate in any private action arising under the federal securities laws.

3.     I am willing to serve as a representative party on behalf of the class, and will provide testimony at a deposition and/or at trial, if necessary.

4.     Plaintiff's transactions in the securities that are the subject of this litigation, which transactions occurred in two separate securities accounts under my control, are listed as follows:

   a).     Plaintiff purchased 2,000 shares of TXIC common stock on December 7, 2009 at $8.85 per share;

   b).     Plaintiff purchased 2,000 shares of TXIC common stock on December 8, 2009 at $9.09 per share;

   c).     Plaintiff purchased 1,200 shares of TXIC common stock on December 22, 2009 at $7.9692 per share;

   d).     Plaintiff purchased 3,000 shares of TXIC common stock on February 2, 2010 at $7.0957 per share;

   e).     Plaintiff purchased 1,000 shares of TXIC common stock on February 23, 2010 at $7.85 per share;

   f).     Plaintiff purchased 2,000 shares of TXIC common stock on May 4, 2010 at $7.03 per share; and

   g).     Plaintiff still holds 11,200 shares of TXIC common stock in these accounts.

5.     During the three years prior to the date hereof, plaintiff has not filed an action in which he has sought to serve, or has served, as a representative party for a class in any action

filed under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond his pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed this 31 day of December, 2010 at Glen Cove, New York.

MICHAEL A. GOLDSTEIN

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. GOLDSTEIN, Individually and on Behalf of All Others Similarly Situated, <br><br> PLAINTIFF(S) <br><br> v. <br><br> TONGXIN INTERNATIONAL LTD., RUDY WILSON, JACKIE CHANG, WILLIAM E. ZIELKE and ZHANG DUANXIANG, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> 2: 11-CV-348 RSWL (JCG_x) <br><br><br> **SUMMONS** |

TO:     DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _David C. Walton_____, whose address is _Robbins Geller, et al., 655 West Broadway, Suite 1900, San Diego, CA 92101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __**JAN 1 2 2011**_____          By: _____**SHEA BOURGEOIS**_____

                                        Deputy Clerk

                                        (Seal of the Court)

                                        SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MICHAEL A. GOLDSTEIN, Individually and on Behalf of All Others Similarly
Situated

**DEFENDANTS**
TONGXIN INTERNATIONAL LTD., RUDY WILSON, JACKIE CHANG,
WILLIAM E. ZIELKE and ZHANG DUANXIANG

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)

David C. Walton (167268)
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101  619/231-1058

Attorneys (If Known)

**II.  BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S.
Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship
of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  ORIGIN** (Place an X in one box only.)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from another district (specify):

☐ 6 Multi-
District
Litigation

☐ 7 Appeal to District
Judge from
Magistrate Judge

**V.  REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No      ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI.  CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
Complaint for Violation of the Federal Securities Laws  15 U.S.C. §§78j(b) 78t(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11-348

**FOR OFFICE USE ONLY:   Case Number:** _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s):  CV-10-09542-VBF(PJW)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Glen Cove, New York |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date  January 12, 2011

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV11- 348 RSWL (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY